Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff
MARK TRAMMELL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK TRAMMELL, *individually and on behalf of all those similarly situated*,<br><br>*Plaintiff*,<br><br>*v*.<br><br>KLN ENTERPRISES INC., dba Wiley Wallaby, *a Minnesota corporation,*<br><br>*Defendant*. | No. 3:23-cv-01884-H-JLB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing: July 15, 2024<br>Time: 10:30 am<br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 12A<br><br>Complaint Filed: October 16, 2023<br>Trial Date: None Set |

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL AND PROCEDURAL BACKROUND ........ 4

STANDARD OF REVIEW ........ 6

ARGUMENT ........ 6

- I. Trammell Has Adequately Alleged the Use of Artificial DL Malic Acid As a Flavor. ........ 6
  - A. Trammell's Factual Averments Are Plausible Under Any Honest Reading of the FAC ........ 7
  - B. Trammell is Not Required To Exclude Alternative Explanations. ........ 9
  - C. KLN's Reading Has Been Rejected By Every Court to Review This Issue. ........ 11
- II. Trammell's Testing Allegations Satisfy Rule 9(b). ........ 13
- III. Trammell Has Adequately Alleged that Reasonable Consumers Are Likely to Be Deceived By the Products' Labels. ........ 14
  - A. The Reasonable Consumer Is the Average, Unsophisticated, Unwary Consumer. ........ 15
  - B. The Reasonable Consumer Is Not Required to Investigate the Ingredients List. ........ 17
  - C. The Products' Ingredients List Does Not Resolve the Front and Back Labels' Deceptive Statements. ........ 19
  - D. The Labels On Many Brightly Colored, Shelf-Stable Products Have Been Found to Violate the CLRA. ........ 21
- IV. Trammell Has Standing to Pursue Injunctive Relief. ........ 23
- V. The Claims for Equitable Relief Are Pleaded In the Alternative. ........ 25

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

## Cases

*Allred v. Frito-Lay N. Am., Inc.*,
No.: 17-CV-1345, 2018 WL 1185227 (S.D. Cal. 2018) .......... 22

*Allred v. Kellogg Co.*,
No.: 17-cv-1354, 2018 WL 1158885 (S.D. Cal. 2018) .......... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 8, 10

*Augustine v. Talking Rain Bev. Co., Inc.*,
386 F. Supp. 3d 1317 (S.D. Cal. 2019) .......... 11, 22

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .......... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7, 8

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .......... 18, 19

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......... 10

*Bly–Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) .......... 12, 25

*Brady v. Bayer Corp.*,
26 Cal.App.5th 1156 (2018) .......... 19, 20, 21

*Branca v. Bai Brands, LLC*,
No.: 3:18-cv-00757-BEN, 2019 WL 1082562 (S.D. Cal. 2019) .......... 22

*Cavlovic v. J.C. Penney Corp., Inc.*,
No. 2:17-cv-2042, 2018 WL 2926433 (D. Kan. 2018) .......... 10

*Cimoli v. Alacer Corp.*,
546 F.Supp.3d 897 (N.D. Cal. 2021) .......... 20

*City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) .......... 10

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) .......... 16

*Davidson v. Kimberly–Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 23

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2009) .......... 15

*Delacruz v. Cytosport, Inc.*,
No. C 11–3532 CW, 2012 WL 2563857 (N.D. Cal. June 8, 2012) .......... 21

*Dumont v. Reily Foods Co.*,
934 F.3d 35 (1st Cir. 2019) .......... 19

*Durnford v. MusclePharm Corp.*,
907 F.3d 595, 604 (9th Cir. 2018) .......... 10

*EcoHub, LLC v. Recology Inc.*,
No. 22-cv-09181-TSH, 2023 WL 6725632 (N.D. Cal. 2023) .......... 9

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 4

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
720 F3d 33 (1st Cir. 2013) .......... 11

*General Motors LLC v. Ashton*,
Civ. No. 20-12659, 2021 WL 2549498 (D.N.J. 2021) .......... 9

*Gomez v. Niemann & Heyer, L.L.P.*,
1:16-CV-119, 2016 WL 3562148 (W.D. Tex. June 24, 2016) .......... 17

*Gouwens v. Target Corp.*,
No. 3:22-cv-50016, 2022 WL 18027524 (N.D. Ill. 2022) .......... 11, 21

*Hayes v. General Mills, Inc.*,
2021 WL 3207749 (N.D. Ill. 2021) .......... 11

*Hesse v. Godiva Chocolatier, Inc.*,
463 F.Supp.3d 453 (S.D.N.Y. 2020) .......... 17

*Hill v. Roll Int'l Corp.*,
195 Cal.App.4th 1295 (2011) .......... 16

*Hilsley v. General Mills, Inc.*,
376 F.Supp.3d 1043 (S.D. Cal. 2019) .......... 18, 22

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017) .......... 12

*Hunt v. Sunny Delight Bevs. Co.*,
No. 8:18-cv-00557, 2018 WL 4057812 (C.D. Cal. 2018) .......... 23

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) .......... 10, 14

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*,
No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) .......... 24

*Ivie v. Kraft Foods Global, Inc.*,
961 F.Supp.2d 1033 (N.D. Cal. 2013) .......... 11, 21

*Johnson-Jack v. Health-Ade LLC*,
587 F. Supp. 3d 957 (N.D. Cal. 2022) .......... 25

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) .......... 1

*Linear Tech. Corp. v. Applied Materials, Inc.*,
152 Cal.App.4th 115 (2007) .......... 15

*Lozano v. Pruvit Ventures, Inc.*,
No. CV 23-4394-GW-SKx, ECF No. 20 (C.D. Cal. 2023) .......... 24

*Lozano v. Walmart, Inc.*,
No. CV 23-4500, 2024 WL 412606 (C.D. Cal. 2024) .......... 11, 20

*McCall v. Publix Super Markets, Inc.*,
No: 8:22-cv-584-MSS-CPT, 2023 WL 2362542 (M.D. Fla. 2023) .......... 11

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) .......... 21

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)............ 21

*Moore v. Trader Joe's*, 4 F.4th 874 (9th Cir. 2021)............ 15

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)............ 6

*Nacarino v. Chobani, LLC*, No. 3:20-cv-07437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022)............ 24

*Noohi v. Kraft Heinz Co.*, CV 19-10658 DSF (SKx), 2020 WL 5554255 (C.D. Cal. 2020)............ 11

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)............ 25

*Petzschke v. Century Aluminum Co.*, 729 F.3d 1104 (9th Cir. 2013)............ 9

*Salazar v. Target Corp.*, 83 Cal. App. 5th 571 (2022)............ 19

*Scheibe v. Livwell Prods., LLC*, No. 23-cv-216, 2023 WL 4414580 (S.D. Cal. 2023)............ 13

*Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352 (2013)............ 15

*Sims v. Campbell Soup Co.*, 2018 WL 7568640 (C.D. Cal. 2018)............ 11, 20, 22

*SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110 (9th Cir. 2022)............ 10

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)............ 25

*Souter v. Edgewell Personal Care Co.*, -- F. App'x. ---, 2023 WL 5011747 (9th Cir. 2023)............ 16, 19

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)............ 9

*Tapia v. Coca-Cola Co.*, No. 22-cv-01362, 2023 WL 2621346 (N.D. Cal. 2023)............ 11, 22

*United States v. Mariner Health Care, Inc.*, 552 F.Supp.3d 938 (N.D. Cal. 2021)............ 9

*Viggiano v. Johnson & Johnson*, No. CV 14–07250, 2015 WL 12860480 (C.D. Cal. 2015)............ 22

*Williams v. Gerber Products*, 552 F.3d 934 (9th Cir. 2008)............ 15, 17, 20

*Young v. Neurobrands, LLC*, No. C 18-05907, 2019 WL 13247942 (N.D. Cal. 2019)............ 22

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010)............ 16

**Statutes**

Sherman Law, Cal. Health & Saf. Code § 109875 .............................................. 8
Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ....................... 1, 6

**Regulations**

21 C.F.R. § 101.22(a)(1) ........................................................................... 9
21 C.F.R. § 101.22(i)(2)............................................................................. 8
21 C.F.R. § 184.1069(a)............................................................................. 7

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................. 6

**Treatises**

1A *Callman on Unfair Competition, Trademarks, and Monopolies* (4th ed. 2004) .......................................................................................... 16

## INTRODUCTION

The California Consumer Legal Remedies Act ("CLRA") prohibits food manufacturers from "[r]epresenting that goods ... have ... characteristics [or] ... benefits ... that they do not have[,]" Cal. Civ. Code § 1770(a)(5), "[r]epresenting that goods ... are of a particular standard, quality, or grade ... if they are of another," *id*. § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised," *id*. § 1770(a)(9). Central to the statute's purpose is a simple principle: Consumers are entitled to rely on the accuracy of product labelling and the claims made there. As the California Supreme Court has said, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

Here, Plaintiff Mark Trammell has alleged that he purchased Defendant KLN Enterprises' Wiley Wallaby Very Berry licorice candies ("the Products") in reliance on their claim—prominently displayed on the front and back of the Products—to be "Naturally Flavored" and "Free of Artificial Flavors." These claims are reinforced with depictions of the strawberries and raspberries that purportedly provide the flavors of the Products.

But these flavoring claims, it turns out, are false. Industry standard testing has determined that these Products are flavored using artificial DL malic acid (a byproduct of chemical processes using butane and other petroleum substrates), through a standard food industry process by which fruit flavors are replicated by manipulating the balance between acids and sugars. Under governing FDA regulations—enacted as substantive state law—these Products are actually "Artificially Flavored," and should be labelled as such. They are not.

KLN has once again moved to dismiss the entire First Amended Complaint ("FAC"). First, it asserts, Trammell has not adequately pleaded that malic acid is

used in the Products as a flavor. But the FAC contains a whole section of allegations that mixes factual assertions about the Products; averments about the techniques and science of food formulation; and the regulatory background that govern food labelling, to build the case that malic acid is used in the Products to simulate, resemble, or reinforce the characterizing flavor of strawberry and raspberry. Under FDA regulations, a flavor can be "any substance," and if it is used to simulate, resemble, or reinforce the characterizing flavor, it is a flavor under FDA regulations and state law. Those same regulations require an "Artificially Flavored" disclosure if the malic acid is synthetically derived. These allegations are not unadorned conclusions or formulaic recitation of the elements. Under any honest reading of the FAC, they are plausibly pleaded.

But KLN insists the FAC must nonetheless be dismissed because it advances an alternative theory—that malic acid is used as a flavor enhancer rather than as a flavor. It insists that to plausibly plead his allegations, Trammell not only has to plausibly plead his own theory of KLN's liability, but also plausibly plead facts *excluding* KLN's alternative theory. This is simply not correct. This is not how Rule 12 works; directly on-point Ninth Circuit case law says as much.

A plaintiff is required only to plead plausible facts as to defendant's liability, but not to exclude every possible inference of lawful behavior. To require otherwise would be to put the Court in the position of choosing between plausible alternatives—which it is not empowered to do, especially on a motion to dismiss. This is why KLN has managed to cite not a single case, from anywhere, adopting the position it advances here: that a complaint must be dismissed unless the plaintiff can plead plausible facts demonstrating that malic acid ***isn't*** being used as a flavor enhancer. KLN's argument imposes requirements that Rule 12 rejects.

Then, KLN moves (again) to dismiss Plaintiff's allegations regarding testing of the malic acid in the Products, insisting that Trammell has not plausibly

alleged that the malic acid is artificially and not naturally derived. This argument is simply makeweight. Trammell pleads specifics about the lab, the method, the date, the results, and the import of those results.

KLN also argues that no reasonable consumer would be deceived by its labelling statements. Here, it grossly misapprehends the "reasonable consumer" standard that governs the CLRA—especially on a motion to dismiss. To win dismissal as a matter of law, KLN has to show that ***no*** reasonable consumer would be deceived. And it has to judge that inquiry not by the standards of a sophisticated reader of labels, or someone who approaches ingredients lists like a judge reading an ambiguous statute, but like an ordinary, unsophisticated, unwary consumer bringing the level of care reasonable to a low-cost food purchase.

This is why the Ninth Circuit has cautioned that dismissal of a complaint for failure to plead reasonable consumer confusion should be "rare"—a point the California Attorney General recently raised again in an amicus brief that is attached to the Request for Judicial Notice. KLN is left, ultimately, to argue that reasonable consumers would never believe that a shelf-stable, brightly colored candy would be naturally flavored. But courts in this state have found that the labels on a variety of shelf-stable, brightly colored food products could deceive reasonable consumers. And the company cannot answer the fundamental question: If its "Naturally Flavored" and "Free of Artificial Flavors" claims are so patently unbelievable to reasonable consumers, why did it make them in the first place?

KLN again argues that Trammell lacks standing to pursue injunctive relief, despite Ninth Circuit precedent that says exactly the opposite. And it argues that Trammell's claims for equitable relief must be dismissed because he has adequate legal remedies, despite those claims being properly pleaded in the alternative. All told, KLN's arguments are unavailing, and its motion should be denied in its entirety. If granted in any respect, Trammell should be given leave to amend his

Complaint. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003).

**FACTUAL AND PROCEDURAL BACKROUND**

On or about May 23, 2023, Mr. Trammell purchased the Products from a Target store in Encinitas, California. FAC ¶ 18. Trammell is a student who attempts to eat "clean." He reviews food product labels, including the Products' label, to understand the characteristics of the products he consumes, and he prefers to consume only products that contain all-natural flavorings. *Id*. ¶ 19.

The front label (or "principal display panel") of the Products state that the Products are "Naturally Flavored" and "Natural Strawberry and Raspberry Flavored," while the back label states that the Products are "Free of … Artificial Colors & Flavors." These claims are reinforced by depictions of fruits:






*Id*. ¶ 21.

These flavoring claims are false. The Products state that they all contain an ingredient called "malic acid." *Id*. ¶ 22. Testing conducted on or about June 28, 2023 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts identified the presence of the D isomer of malic acid in the Products, which is the industry standard method of determining whether the malic acid used in a food is artificial DL malic acid. *Id*. ¶¶ 26-28. The malic acid in the Products is used as a flavor. *Id*. ¶¶ 30-42. Because the Products misrepresent that the Products contain only natural flavors and contain artificial flavor ingredients without disclosing their use, Mr. Trammell claims, these Products are deceptively labelled and misbranded. *Id*. ¶¶ 43-46.

Mr. Trammell brings consumer deception claims on behalf of a California class under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., and for unjust enrichment and for breach of an express warranty under California law.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss, supra.*

## ARGUMENT

### I. Trammell Has Adequately Alleged the Use of Artificial DL Malic Acid As a Flavor.

KLN asserts that to survive a motion to dismiss, "Plaintiff must allege facts for each of his claims demonstrating that the malic acid in the Product is ***both*** a flavoring, and ***not*** a flavor enhancer, pH balancer or serving some other non-flavoring purpose." Mot. 7 (emphasis in original). That is, KLN argues, Mr. Trammell's allegations must both plausibly allege that the malic acid in the Products is used a flavor and provide plausible support for the proposition that it has ***no other purpose***. This is plainly wrong as a matter of black letter law. It is not how Rule 12 works.

### A. Trammell's Factual Averments Are Plausible Under Any Honest Reading of the FAC.

Under Rule 12, an "entitlement to relief" requires "more than labels and conclusions," but instead factual allegations sufficient "to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," *id.* at 556, but plaintiff must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 557. Determining plausibility is a two-step process: a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, it should "assume the[ ] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.*

Here, Mr. Trammell has clearly pleaded a plausible basis for relief. The FAC alleges that the Products contain malic acid. FAC ¶ 22. There is a naturally derived type of malic acid, called L malic acid, but it is expensive to use in mass-produced foods. FAC ¶ 23. There is also a synthetic version derived from petroleum substrates, DL malic acid. FAC ¶¶ 24-25. *See also* 21 C.F.R. § 184.1069(a) ("DL-malic acid does not occur naturally.").

In foods, a flavor can be "***any*** substance, the function of which is to impart flavor," and is not limited to traditional flavorings such as strawberry. FAC ¶ 34 (citing 21 C.F.R § 101.22(a)(1) (emphasis added)). Flavor formulators use the substance malic acid to adjust the ratio between acids and sugars that is the basis for "characterizing flavors" in foods such as strawberry—these flavors as experienced on the human tongue are simply a ratio between acids and sugars. FAC ¶¶ 29-30. By adjusting that ratio through the use of malic acid—that is, by adding malic acid to the mix—food manufacturers are enabled to "to create or simulate from scratch a 'flavor' such as strawberry, through replication of the

sugar/acid ratio present in strawberries in nature." FAC ¶ 31. They can also "reinforce the characterizing fruit flavor of the food product" in the same manner. FAC ¶ 32.

Under FDA regulations (enacted as substantive state law by the Sherman Act, Cal. Health & Saf. Code § 109875 *et seq*.) if a food's characterizing flavor "is not created ***exclusively*** by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. Specifically, if any component is present used that 'simulates, resembles or reinforces' the characterizing flavor, the front label must prominently inform consumers that the product is 'Artificially Flavored.'" FAC ¶ 37 (citing 21 C.F.R. § 101.22(i)(2) (emphasis in original). Thus, because KLN uses malic acid in the Products to "chang[e] the ratio between sugars and acids that is naturally found in fruits," it "reinforces, simulates, or creates the [Product's] characterizing flavors, regardless of any other effect it may have or purpose for which it was included"—making it a flavor. FAC ¶ 42.

This is plainly enough "factual enhancement" to cross "the line between possibility and plausibility." *Twombly,* 550 U.S. at 557. These allegations suffice to "raise a reasonable expectation that discovery will reveal evidence" that the malic acid is used as a flavor under FDA regulations, *id*. at 556, and to "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Mixing factual assertions about the Products; averments about the techniques and science of food formulation; and the regulatory background that governs these claims, these allegations are plainly not an "unadorned, the-defendant-unlawfully-harmed-me accusation" or a "formulaic recitation of the elements of a cause of action." *Id.* at 678. Under any honest reading of the FAC, these allegations are plausibly pleaded.

**B. Trammell is Not Required To Exclude Alternative Explanations.**

And KLN doesn't even pretend to suggest otherwise. Instead, it asserts that the FDA regulations also distinguish between an artificial flavor, which imparts flavor not derived from a natural source, and a flavor enhancer, which supplements, enhances, or modifies the original taste. *Compare* 21 C.F.R. § 101.22(a)(1) *with* § 170.3(o)(11). Because, it claims, Trammell has not alleged "facts for each of his claims demonstrating that the malic acid in the Product is … ***not*** a flavor enhancer," the allegations are implausible and the FAC must be dismissed. Mot 7 (emphasis in original).

But KLN raises, *at best*, an alternative explanation for the use of malic acid in the Products. And "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Id*. (emphasis in original).[1] *See also, e.g., EcoHub, LLC v. Recology Inc*., No. 22-cv-09181-TSH, 2023 WL 6725632, at *10 (N.D. Cal. 2023) (plaintiff "is not required to allege facts showing this is the most likely explanation, only that [plaintiff's] explanation is plausible"); *General Motors LLC v. Ashton*, Civ. No. 20-12659, 2021 WL 2549498, at *7 n.7 (D.N.J. 2021) ("[T]he Rule 12(b)(6) standard does not allow a court to impose its

---

[1] The Ninth Circuit has also stated that, where a plaintiff's explanation is *possible* rather than *plausible*, it must allege "[s]omething more," such as facts "tending to exclude the possibility that the alternative explanation is true." *Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013). But as discussed above, Trammell's allegations cross the line from possibility to plausibility. "Thus, unlike in *Petzschke* … [Trammell] need not rule out obvious alternative explanations, and its First Amended Complaint survives a motion to dismiss." *United States v. Mariner Health Care, Inc*., 552 F.Supp.3d 938, 949 (N.D. Cal. 2021).

own judgment to weigh which explanation is the most likely. Rather, the well-pleaded factual allegations *must* be accepted as true.").

KLN turns this standard on its head: It asserts that Trammell is required to plead not just plausible facts supporting liability, but also plausible facts that ***exclude*** KLN's alternative interpretation. Mot. 7 (plaintiff "must allege facts for each of his claims demonstrating that the malic acid in the Product is … ***not*** a flavor enhancer") (emphasis in original).

This is simply not how Rule 12 works. "Rule 12 does not require the Complaint to exclude the possibility of lawful conduct." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1121 (9th Cir. 2022). *See also Cavlovic v. J.C. Penney Corp., Inc.*, No. 2:17-cv-2042, 2018 WL 2926433, at *5 (D. Kan. 2018) ("a plaintiff's complaint need not exclude *all* alternative explanations to survive a motion to dismiss.") (emphasis in original). This is because "plaintiffs are generally not … required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp*., 907 F.3d 595, 604 n.8 (9th Cir. 2018) (quoting, *inter alia, Iqbal*, 556 U.S. at 678). And even under Rule 9(b), a plaintiff is not required to provide "irrefutable evidence" of wrongdoing at the pleading stage. *City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc*., 70 F.4th 668, 681 (3d Cir. 2023). That is, "even under Rule 9(b) the plaintiff's allegations will suffice so long as they give the defendant" notice of plaintiff's theory of liability and "provide the court 'some assurance that the theory has a basis in fact.'" *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (*quoting Berson v. Applied Signal Tech., Inc*., 527 F.3d 982, 989–90 (9th Cir. 2008)). This Trammell has done, by offering facts that plausibly describe how malic acid is used as a flavor, supported by reference to governing regulations.

### C. KLN's Reading Has Been Rejected By Every Court to Review This Issue.

Here, on Rule 12, it is "not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F3d 33, 45 (1st Cir. 2013). *See also In re Juul Labs*, 555 F. Supp. at 960 ("not appropriate" on Rule 12 for Court to "accept the gloss that [a defendant] attempts to put on plaintiffs' allegations and the documents on which they rely"). It is for this reason that courts nationwide consistently hold that "whether malic acid functions as a flavor or a flavor enhancer in the [food] at issue is a factual dispute not appropriate for resolution at the motion to dismiss stage"—even when recognizing, as these courts always do, that "the FDA distinguishes between an artificial flavor … and a flavor enhancer." *Tapia v. Coca-Cola Co*., No. 22-cv-01362, 2023 WL 2621346, at *3 (N.D. Cal. 2023).[2]

Rather notably, KLN is unable to identify a single case from any court dismissing a complaint because a plaintiff failed to exclude the possibility that malic acid was used as a flavor enhancer instead of as a flavor. In fact, the cases cited by KLN don't deal with malic acid ***at all***.

For example, in *Ivie v. Kraft Foods Global, Inc*., 961 F.Supp.2d 1033, 1041 (N.D. Cal. 2013) (at Mot. 8), the issue was whether two artificial ingredients—sodium citrate and potassium citrate—functioned as flavors. The court dismissed

[2] KLN's view is not simply a "minority view." It is a party of one. *See also, e.g., Lozano v. Walmart, Inc.,* No. CV 23-4500, 2024 WL 412606, at *9 (C.D. Cal. 2024); *Scheibe v. Livwell Prods., LLC*, No. 23-cv-216, 2023 WL 4414580, at *4 (S.D. Cal. 2023); *McCall v. Publix Super Markets, Inc*., No: 8:22-cv-584, 2023 WL 2362542, at *4 (M.D. Fla. 2023); *Gouwens v. Target Corp*., No. 3:22-cv-50016, 2022 WL 18027524, at *2 (N.D. Ill. 2022); *Hayes v. General Mills, Inc*., 2021 WL 3207749, at *3 (N.D. Ill. 2021); *Noohi v. Kraft Heinz Co*., CV 19-10658 DSF, 2020 WL 5554255, at *3 (C.D. Cal. 2020); *Augustine v. Talking Rain Bev. Co., Inc*., 386 F. Supp. 3d 1317, 1331 (S.D. Cal. 2019); *Sims v. Campbell Soup Co*., 2018 WL 7568640, at *5 (C.D. Cal. 2018).

the complaint because there was no "basis for such a conclusion in the FDA regulations or otherwise." *Id*. at 1042. Here, as set forth in the FAC (and as has been accepted by multiple other courts across the country, *see* note 2), there is such a basis in the FDA regulations.

Then, KLN cites *Hu v. Herr Foods, Inc.*, 251 F.Supp.3d 813 (E.D. Pa. 2017) (at Mot. 8), where the court dismissed a complaint alleging that citric acid functioned as a preservative. But *Hu* (1) applied very different New York state law and (2) turned on the very different regulatory scheme for preservatives. Moreover, there was a plain failure of pleading in that case, since "it [was] unclear whether Plaintiff ha[d] squarely alleged that citric acid does function as a preservative in the Products—as opposed to alleging that the Products contain citric acid, and then separately alleging that citric acid *in general* 'helps minimize the probability and severity of such bacterial outbreaks and thus preserves the food against bacterial contamination.'" *Id*. at 821 (emphasis added). Here, Trammell has squarely alleged that the DL malic acid used in the Products is used to create, simulate, and/or reinforce the characterizing fruit flavor of the Products and that the DL malic acid used in the Products is artificial. FAC ¶¶ 30-42. Multiple federal district courts have held that this is sufficient at the pleading stage. Should the Court determine nonetheless that there is something lacking in Trammell's allegations regarding malic acid being used as a flavoring, Plaintiff should be granted leave to file a Second Amended Complaint setting forth those additional factual averments. *See Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

"Reading the allegations in the Complaint in the light most favorable to Plaintiff[], as it must," this Court—consistent with courts' practice throughout the country—should find that Plaintiff has "adequately alleged that the malic acid used in the Products acts as a flavor." *Willard v. Tropicana Mfg. Co., Inc.*, 577

F.Supp.3d 814, 828 (N.D. Ill. 2021). Trammell will, of course, be required to prove that contention through discovery. But that is a matter for another day, under the standard of another Rule.

**II. Trammell's Testing Allegations Satisfy Rule 9(b).**

KLN asserts the Trammell has not adequately alleged the malic acid used in the Products is artificial DL malic, asserting that he alleges merely "skeletal details of the supposed testing, leaving the Court and Defendant in the dark as to the chosen methodology and other essential facts." *Contra* Mot. 11-13. KLN is grasping at straws, as is plainly suggested by its vague, throat-clearing arguments on this point.

As set forth in Trammell's opposition to the first motion to dismiss filed by KLN, case law in and out of this state establishes that alleging—as Trammell did—that "'independent third-party laboratory testing' has revealed that the Products actually use DL malic acid" is "sufficient notice as to which Products Plaintiff alleges to be misleadingly labelled." *Scheibe v. Livwell Prods., LLC*, No. 23-cv-216, 2023 WL 4414580, at *4 (S.D. Cal. 2023). The Court's Order on that motion to dismiss did not identify specific ways in which Trammell's testing allegations were insufficient. *See* ECF 13.

But whatever deficiency the Court perceived has been more than rectified in the FAC. The "industry standard" method for distinguishing whether a food contains natural or artificial malic is "to test for the presence of the 'D isomer' of malic acid," because "[t]his isomer is not present in any amount in L malic acid," and its presence "in any amount in a food or beverage" therefore "indicates the use of artificial DL malic acid instead of natural L malic acid." FAC ¶ 26. This method of testing was employed on the Products purchased by Mr. Trammell "on or about June 28, 2023 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts, a reputable independent food testing and analysis laboratory that has conducted

testing for the food and beverage industry since 1984." FAC ¶ 27. The result of this testing "revealed that the D isomer was present in the Product purchased by Plaintiff," which result "establishes that the malic acid used in these Products is DL malic acid, and not L malic acid." FAC ¶ 28.

These allegations adequately narrate the "who" (Krueger Food Laboratories); the "when" (June 28, 2023); the "what" (the Product purchased by Plaintiff, which is set forth with specificity on the first page of the FAC); the "where" (Chelmsford, Massachusetts); and the "how" (the industry standard method of testing foods for the D isomer of malic acid, whose presence establishes that the malic acid used is DL malic acid).

Because "DL-malic acid does not occur naturally," 21 C.F.R. § 184.1069(a), these results adequately allege that the malic acid used in the Products is artificial. KLN's vague and unexplained contention that it is "in the dark" about the "chosen methodology and other essential facts" is simply untrue. Mot. 13. And there is not a whiff of case law support for KLN's insinuation that Plaintiff was required to attach the actual testing results. *See* Mot. 5. There is no such requirement, and KLN doesn't even attempt to provide support for that contention.

Later, KLN will get the chance to attack the "viability" of this testing, *see* Mot. 5—whatever that means (and it appears to be a word chosen to avoid saying "reliability")—but determining the "viability" of the testing alleged is not the task before this Court on a motion to dismiss. That task is simply to determine whether Trammell has given KLN notice of his theory of liability and "provide[d] the court 'some assurance that the theory has a basis in fact.'" *In re BofI Holding*, 977 F.3d at 794 (quotation omitted). He plainly has.

## III. Trammell Has Adequately Alleged that Reasonable Consumers Are Likely to Be Deceived By the Products' Labels.

KLN argues that reasonable consumers would not be misled by its "Naturally Flavored" and "Free of … Artificial Colors & Flavors" labelling

claims, reinforced by depictions of fruits on the label. FAC ¶ 21. This is so, KLN asserts, because no reasonable consumer would understand it to be claiming that the Products contain only natural flavors, as opposed to some natural flavors and some other (unstated, undescribed) artificial flavors. Because its "Naturally Flavored" and "Free of … Artificial Colors & Flavors" statements are allegedly at least partly true, and because the Product is a candy, says KLN, no reasonable consumer would be deceived. *Contra* Mot. 13-18.

### A. The Reasonable Consumer Is the Average, Unsophisticated, Unwary Consumer.

KLN misapprehends the governing standard, badly. As a starting matter, a complaint under the CLRA can only be dismissed on the pleadings when *no* reasonable consumer could be deceived by the advertising. *See, e.g., Williams v. Gerber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008) (explaining that dismissal is appropriate where it was "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived"); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2009) ("*no* reasonable consumer would have been deceived . . ."); *Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1372 (2013) ("*No* reasonable person could ... believ[e] ...").[3]

Under this standard, whether a statement "is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams,* 552 F.3d at 938 (citing *Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 134–35 (2007)). In fact, it will be a "rare situation" where granting a motion to dismiss on "reasonable consumer" grounds is appropriate. *Id.*

[3] The burden is different on summary judgment: To win a Rule 56 motion, the plaintiff must show that "a probability that a *significant portion* of the general consuming public or of target consumers, acting reasonably in the circumstances, would be misled." *Moore v. Trader Joe's*, 4 F.4th 874, 882 (9th Cir. 2021) (emphasis added). The difference merely emphasizes the differing procedural postures and governing standards of a Rule 12 versus a Rule 56 motion. Throughout its motion, KLN seeks to obscure that difference.

at 939. This is because evaluating advertising's "capacity, likelihood or tendency to deceive or confuse" requires "consideration and weighing of evidence from both sides[,]" which is not possible at the pleading stage. *Linear Tech.*, 152 Cal.App.4th at 134–35.

Then, the reasonable consumer is a person of ordinary intelligence and expertise—the "general consuming public or … targeted consumers, acting reasonably in the circumstances." *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1228–1229 (9th Cir. 2019). But the reasonable consumer is not sophisticated or "versed in the art of inspecting and judging a product" or "in the process of its preparation or manufacture." *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting 1A *Callman on Unfair Competition, Trademarks, and Monopolies* (4th ed. 2004), § 5:17, p. 5–103). *See also Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006) (same). That is, the reasonable consumer is not expected to have the same amount of knowledge about a product, its content, or the presentation of nutritional labels that the seller does. Nor is the reasonable consumer "exceptionally acute [or] sophisticated" or "wary [and] suspicious of advertising claims." *Souter v. Edgewell Personal Care Co*., -- F. App'x. ---, 2023 WL 5011747, *1 (9th Cir. 2023) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1304 (2011)). *See also Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 509–10, 512 (2003) (same).

It is crucial to understand the burden this standard imposes on a defendant moving for dismissal as a matter of law. It is incredibly demanding. A defendant such as KLN does not win dismissal if it shows merely that ***some*** reasonable consumers might ***not*** be confused by its claims. It doesn't win dismissal if it shows that some especially acute, wary, or suspicious consumers might penetrate the fog of deceptive labelling to get at the truth. Rather, the suit proceeds to discovery unless ***no*** reasonable but unsophisticated consumer could be confused. *See, e.g.,*

*Williams,* 552 F.3d at 939; *Davis*, 691 F.3d at 1161; *Simpson*, 219 Cal. App. 4th at 1372. Courts in other states that employ the reasonable consumer standard have stated the same. *See, e.g., Gomez v. Niemann & Heyer, L.L.P.*, 1:16-CV-119, 2016 WL 3562148, at *4 (W.D. Tex. 2016) ("Only when 'reasonable minds' cannot differ as to whether a [statement] would be deceptive, misleading, or unfair to the unsophisticated consumer may the court enter a decision as a matter of law."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 467 (S.D.N.Y. 2020) ("This reasonableness inquiry is rarely resolved on a motion to dismiss" because defendant "must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled.'") (citations and quotations omitted).

### B. The Reasonable Consumer Is Not Required to Investigate the Ingredients List.

This is not one of those rare situations, where no reasonable consumer could be misled by KLN's labelling. KLN's argument is that the Product is a shelf-stable candy, and no reasonable consumer would believe that a shelf-stable candy is naturally flavored. This is a quintessentially factual argument, relying on a flawed reading of the reasonable consumer standard. And it relies fundamentally on exactly the kind of sleight of hand that consumer protection statutes are meant to combat.

To start, KLN asserts that a "Plaintiff does not allege that the label states the Product is 'all natural' or completely free of artificial ingredients." Mot. 16. In fact, it argues, the "ingredient list discloses the existence of ingredients, like polydextrose (a synthetic polymer of glucose), that a reasonable consumer would understand, or at least suspect, to be artificial." Mot. 17. From this, it argues that no reasonable consumer could believe that the candy contains no artificial flavoring—despite the clear statements to the contrary on the label.

The argument starts from a wrong premise and drives on to a faulty conclusion. KLN posits precisely the kind of hypervigilant, highly sophisticated

consumer that the reasonable consumer standard does not embody or demand. Plaintiff's allegations were simple: He believed based on his reading of the label that the Products were "Naturally Flavored" and "Free of … Artificial … Flavors." FAC ¶¶ 50-53. And he believed that for a very good reason: because that is what ***KLN's labels say***. *Id.* ¶ 21. *See also, e.g., Hilsley v. General Mills, Inc.*, 376 F.Supp.3d 1043, 1046 (S.D. Cal. 2019) (reasonable consumers could be misled by label statements that shelf-stable gummy fruit snacks contained "no artificial flavors" and were "naturally flavored").

In KLN's world, the consumer has some sort of duty to contest the explicit, black and white statements made directly on the Products' label—reviewing ingredients lists and parsing product labels to determine whether KLN is telling the truth when it says its Products are "Free of Artificial Flavors," instead of simply relying on what the labels actually say. *Polydextrose*, the consumer is apparently supposed to think after comparing the front label claims to the ingredients list: *KLN must be lying when it says its Products are "Free of Artificial Flavors."*

With respect, this is nonsense, besides being totally without support in the case law. The ordinary member of the consuming public is required to bring to this purchase the minimal level of care reasonable to a $3 food product, and is not charged with a duty to ferret out KLN's misleading statements. As quoted by the California Attorney General—charged by statute with enforcing the CLRA—in a recently filed Ninth Circuit amicus brief on this issue, "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (quoted in the Attorney General's Amicus Br. in *Souter v. Edgewell Personal Care Co.*, -- F. App'x. ---, 2023 WL 5011747, *1 (9th

Cir. 2023)) (Exhibit A to the Motion for Judicial Notice). Nor is the reasonable consumer required to have scientific knowledge, *see Brady v. Bayer Corp*., 26 Cal.App.5th 1156, 1174 (2018), or be "versed in the art of inspecting and judging a product" or "in the process of its preparation or manufacture," *Yumul*, 733 F. Supp. 2d at 1125. Again, the reasonable consumer is an ordinary person who is neither "exceptionally acute [or] sophisticated" nor "wary [and] suspicious of advertising claims." *Souter*, 2023 WL 5011747, *1. *See also Dumont v. Reily Foods Co*., 934 F.3d 35, 40 (1st Cir. 2019) (reasonable consumers are not "erudite reader[s] of labels … armed perhaps with several dictionaries, a bit like a federal judge reading a statute"). The reasonable consumer is a person who, when told by a food manufacturer that its Products are "Free of Artificial Flavors," assumes he or she is being told the truth.

### C. The Products' Ingredients List Does Not Resolve the Front and Back Labels' Deceptive Statements.

Moreover, "Plaintiffs are entitled to present evidence on how consumers actually understand these labels." *Bell,* 982 F.3d at 480. Here, KLN asserts that a "reasonable consumer" would investigate the ingredients list, see an ingredient that sounds like it might be artificial ("polydextrose"), and realize that the Products are likely artificially flavored. But in assessing the reasonable consumer standard, "[w]hat matters ... is how consumers actually behave—how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." *Salazar v. Target Corp*., 83 Cal. App. 5th 571, 579 (2022).

And the reasonable consumer standard imposes no such duty to investigate an ingredients list on the part of consumers. *See, e.g*., *Williams*, 552 F.3d at 939-40 (reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list

in small print on the side of the box"); *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 900 (N.D. Cal. 2021) (defendant cannot "place the onus on consumers to investigate the supplemental facts on a product's back label to determine the truth of a representation on the front label"). This is because "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Williams*, 552 F.3d at 939–40. That is, reasonable consumers are entitled to assume they are not being lied to by food manufacturers.

This is why courts in this state have rejected exactly the claim that KLN is making here—that because the ingredients list discloses a non-flavoring ingredient that sounds artificial, no one would believe the label's claim that the Products are "Free of Artificial Flavors." *See, e.g., Sims v. Campbell Soup Co.*, No. EDCV 18-668 PSG, 2018 WL 7568640, at *6 (C.D. Cal. 2018) (rejecting argument that "it is implausible that a reasonable consumer would care about whether a product has artificial flavors but not whether it has other artificial ingredients"); *Lozano,* 2024 WL 412606 at *5 (rejecting argument that because food product contains "a multitude of other ingredients that may be produced through synthetic processes," plaintiff has not plausibly alleged that she was misled by natural flavoring labelling claims"). These cases reflect the common-sense notion—enshrined in the CLRA through cases such as *Williams* and others—that reasonable consumers buying an ordinary, inexpensive product like candy are not—and are not generally required to be—"back-label scrutinizers." *Brady*, 26 Cal.App.5th at 1174.

And indeed, what would the reasonable consumer learn if he or she had done what KLN demands, and read the ingredients list to test the label claim that these Products are "Free of Artificial Flavors"? Simply that the Products contain polydextrose, which is not obviously an artificial ingredient to an ordinary person who is unsophisticated about food formulation. "Whether a back label ingredients

list 'can ameliorate any tendency of [a] label to mislead' depends on whether the 'back label ingredients list ... conflict[s] with' or 'confirm[s]' a front label claim." *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1098 (9th Cir. 2023) (quoting *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1017 (9th Cir. 2020)). Nothing in the Products' ingredients list obviously contradicts KLN's statement that they are free of artificial flavors. *See Brady*, 26 Cal.App.5th at 1167 ("[T]here is no protection for literal falseness").

Then, there is the fact that KLN's flavoring claims violate FDA regulations that require the company to state a food product is "Artificially Flavored" if the flavor is not created exclusively by natural flavorings—which DL malic acid is not. FAC ¶ 37 (citing 21 C.F.R. § 101.22(i)(2)). Courts have long accepted that FDA standards "may lend objective criteria by which to determine whether certain words and phrases used on the labels are misleading." *Delacruz v. Cytosport, Inc*., No. C 11–3532 CW, 2012 WL 2563857, at *7 (N.D. Cal. June 8, 2012). *See also Ivie v. Kraft Foods Global, Inc*., 961 F.Supp.2d 1033, 1043 (N.D. Cal. 2013). These FDA regulations are relevant to whether reasonable consumers find the omitted disclosure to be material, and the flavoring claims to be deceptive.

### D. The Labels On Many Brightly Colored, Shelf-Stable Products Have Been Found to Violate the CLRA.

KLN is ultimately left to repeat over and over again—in a section that is notably light on citation to on-point case law—that because the Product is a "shelf-stable, bright red candy," no reasonable consumer would believe it is naturally flavored. *Contra* Mot. 15-16. But repetition does not make it so.

For this proposition, KLN relies mostly on *Gouwens v. Target Corp*., No 22-50016, 2022 WL 18027524 (N.D. Ill. 2022). But the label in *Gouwens* made a different claim ("Natural Flavors With Other Natural Flavors") that is quite different from the stark and definitive one made here: "Free of Artificial Flavors." And, the label in *Gouwens* did not, as here, depict the fruits that provide the

characterizing flavors, which reinforces the "Naturally Flavored" and "Free of Artificial Flavors" claims that KLN makes. *See, e.g.*, *Viggiano v. Johnson & Johnson*, No. CV 14–07250, 2015 WL 12860480, at *4 (C.D. Cal. 2015) (depiction of monk fruit could deceive reasonable consumer into believing sweetener was made entirely or substantially with monk fruit, and not artificially).

The biggest problem with KLN's argument, however, is that courts in and out of this state have found that reasonable consumers could be deceived by natural flavoring claims on a variety of products (gummies, sodas, potato chips, energy drinks, and more) that are shelf-stable and brightly colored—including the on-all-fours labelling claims made in *Hilsley v. General Mills, Inc.*, that shelf-stable fruit snacks closely resembling licorice candy contained "no artificial flavors" and were "naturally flavored." Those deceptively labelled food products include:

- Shelf-stable fruit flavored gummy snacks, *see Hilsley*, 376 F.Supp.3d at 1046;
- Shelf-stable Fanta berry sodas, *see Tapia*, 2023 WL 2621346 at *3;
- Shelf-stable fruit-flavored sparkling waters, *see Augustine v. Talking Rain Bev. Co., Inc.*, 386 F.Supp.3d 1317, 1330 (S.D. Cal. 2019);
- Shelf-stable salt and vinegar potato chips, *see Allred v. Frito-Lay N. Am., Inc.*, No.: 17-CV-1345, 2018 WL 1185227, at *5 (S.D. Cal. 2018);
- Shelf-stable fruit-flavored "V8 Splash" drinks, *see Sims*, 2018 WL 7568640 at *6;
- Shelf-stable fruit-infused antioxidant drinks, *see Branca v. Bai Brands, LLC*, No.: 3:18-cv-00757-BEN, 2019 WL 1082562, at *9 (S.D. Cal. 2019);
- Shelf-stable energy drinks, *see Young v. Neurobrands, LLC*, No. C 18-05907, 2019 WL 13247942, at *5 (N.D. Cal. 2019);

- Shelf-stable "Salt and Vinegar Potato Crisps," *see Allred v. Kellogg Co.*, No.: 17-cv-1354, 2018 WL 1158885, at *1 (S.D. Cal. 2018); and
- Shelf-stable fruit juice blends, *see Hunt v. Sunny Delight Bevs. Co.*, No. 8:18-cv-00557, 2018 WL 4057812, at *1 (C.D. Cal. 2018).

Ultimately, KLN has no answer to an obvious question: If reasonable consumers don't care whether or not candies are naturally flavored, why did the company go out of its way to claim the Products are "Naturally Flavored" and "Free of Artificial Flavors"? Is the Court to believe that food retailers like KLN are in the business of making labelling claims that consumers don't care about and would, on their face, not believe? *That*, indeed, is clearly unreasonable.

**IV. Trammell Has Standing to Pursue Injunctive Relief.**

KLN argues that Plaintiff's claim for injunctive relief must fail because he had pleaded nothing more than an "informational" injury that is now resolved, because he now knows that the Products contain DL malic acid. Not so. *Contra* Mot. 18-21.

In FAC ¶ 73, Plaintiff alleges that "[u]nless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner," and that though he would like to purchase the Products in the future, he cannot do so "because he cannot rely on the Products' labelling, given the deceptions regarding flavoring found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief." Injunctive relief is warranted because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

Additionally, in FAC ¶ 74, Plaintiff pleads that "Defendant has been enabled to charge a price premium for the Products" because of the

misrepresentations made there, and that accurate labelling would eliminate this premium, causing a "decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products." *See also* FAC ¶ 54 (alleging that "Defendant was enabled to charge Plaintiff a premium for the Products relative to key competitors' products," and that "KLN's prices for the Products are higher than those of competing food products, due *inter alia* to the premium associated with naturally flavored foods—which the Products are not."). Thus, "Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief." FAC ¶ 74.

"Taking these allegations as true, if Plaintiff were to succeed in [his] request for injunctive relief, it is reasonable to infer: (i) Defendant would remove the phrase ["Free of Artificial … Flavors"] from the Products to comply with state and federal regulations, (ii) the price of the Products would drop from their current inflated number, and (iii) Plaintiff would only be willing to buy the Products at this reduced amount." *Lozano v. Pruvit Ventures, Inc.*, No. CV 23-4394-GW-SKx, ECF No. 20 at *13 (C.D. Cal. 2023). As a result, Plaintiff has alleged that he is "interested in more than just whether Defendant is 'telling the truth' on its Products' labels; [he] is also concerned with the corresponding economic impact," and thus has alleged "more than just a bare procedural violation or information injury." *Id*. (citing *In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021); *Nacarino v. Chobani, LLC*, No. 3:20-cv-07437-EMC, 2022 WL 344966, at *12 (N.D. Cal. Feb. 4, 2022)).

KLN dismisses these allegations as "conjecture." Not so. They are eminently plausible inferences from Plaintiff's plainly stated allegations; and at this stage of the proceedings, those inferences must be drawn in Plaintiff's favor.

*See Odom v. Microsoft Corp*., 486 F.3d 541, 545 (9th Cir. 2007). This independent economic injury supports prospective injunctive.

**V. The Claims for Equitable Relief Are Pleaded In the Alternative.**

Finally, KLN asserts that the claim for equitable relief under the CLRA as well as the claim for unjust enrichment must be dismissed because Trammell has adequate remedies at law. Mot. 21-22. But these claims for equitable relief are pleaded in the alternative, which is permitted.

In general, a plaintiff may seek equitable relief only if it lacks an adequate legal remedy at law. *See Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 845 (9th Cir. 2020). But *Sonner* "cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation." *Haas v. Travelex Ins. Servs. Inc*., 555 F.Supp.3d 970, 980 (C.D. Cal. 2021). This is simply an extension of Rule 8, permitting a plaintiff to plead "relief in the alternative." Fed. R. Civ. P. 8(a)(3). Even after *Sonner*, courts have held that there is "no bar to the pursuit of alternative remedies at the pleadings stage" under the UCL and FAL. *Johnson-Jack v. Health-Ade LLC*, 587 F.Supp.3d 957, 976 (N.D. Cal. 2022) (collecting cases).

Trammell's Complaint, "to the extent necessary, pleads [these] cause[s] of action in the alternative." Compl. ¶¶ 71, 81, 89. KLN's motion should be denied because Plaintiff is pursuing alternative relief, which is permissible.

**CONCLUSION**

Considering the foregoing, KLN's motion to dismiss should be denied in its entirety. But, even if the Court were to conclude that something essential is lacking in Mr. Trammell's averments, he should be granted leave to replead his First Amended Complaint. *See Bly–Magee*, 236 F.3d at 1019.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

July 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this date, July 1, 2024, I caused the foregoing to be filed into the docket of this matter via the Clerk of Court's CM/ECF system, which filing caused service to be made on all counsel of record.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief does not exceed 25 pages.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff