Case 5:23-cv-01988-JGB-SP Document 32-1 Filed 07/17/24 Page 1 of 28 Page ID #:384

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUMMER WHITESIDE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>KIMBERLY CLARK CORP.,<br><br>*Defendant-Appellee*. | No. 23-55581<br><br>D.C. No. 5:22-cv-01988-JGB-SP<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted May 13, 2024
Pasadena, California

Filed July 17, 2024

Before: Ronald Lee Gilman,* Ronald M. Gould, and Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Gould

---

* The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Product Labels

The panel affirmed in part and reversed in part the district court's dismissal of a putative class action brought against Kimberly Clark Corp., alleging that the label of Defendant's baby wipes was misleading in violation of California's false advertising laws.

Plaintiff claimed that the words "plant-based wipes" and "natural care®" on the front label, together with nature-themed imagery on the packaging, suggested that Defendant's baby wipes contain only natural ingredients with no chemical modifications or processing. The baby wipes contain synthetic ingredients. The district court separated the label designs into two categories: (1) labels where an asterisk was placed after "plant-based wipes*" with a corresponding qualifying statement elsewhere on the front label ("Asterisked Products"); and (2) labels on which no asterisk or qualifying statement appeared on the front label ("Unasterisked Products"). The district court concluded that both the Asterisked Products and Unasterisked Products were not misleading as a matter of law.

California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act prohibit advertising that has a capacity to mislead a reasonable consumer. If a product's front label is plausibly misleading to a reasonable consumer, then the court does not consider

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case 5:23-cv-01884-JGB-SP Document 32-1 Filed 07/10/24 Page 3 of 28 Page ID #:539
of 28



the back label at the pleadings stage, but the back label may be considered if the front label is ambiguous. The panel agreed with Plaintiff that a front label can be unambiguous for Fed. R. Civ. Pro. 12(b)(6) purposes even if it may have two possible meanings, so long as the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning.

The panel reversed the district court's dismissal of Plaintiff's claims as to the Unasterisked Products. The panel rejected Defendant's contention that the Unasterisked Products' front label was ambiguous, such that the district court correctly considered the back label. Plaintiff plausibly alleged that a reasonable consumer could interpret the front label as unambiguously representing that the Products do not contain synthetic ingredients, precluding Defendant's reliance on the back-label ingredients list.

The panel affirmed the district court's dismissal of Plaintiff's claims as to the Asterisked Products. The asterisk and qualifying statements on the Asterisked Products, paired with the back label ingredients, make it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.

The panel rejected Defendant's claim that Fed. R. Civ. P. 9(b) provided an alternative basis for dismissal because Plaintiff's complaint sufficiently alleged the particular label she herself saw.

## COUNSEL

Glenn A. Danas (argued), Ryan J. Clarkson, and Katelyn M. Leeviraphan, Clarkson Law Firm PC, Malibu, California; Zachary Crosner, Crosner Legal PC, Beverly Hills, California; for Plaintiff-Appellant.

Theodore J. Boutrous Jr. (argued), Timothy W. Loose, and Patrick J. Fuster, Gibson Dunn & Crutcher LLP, Los Angeles, California; Andrew M. Kasabian, Gibson Dunn & Crutcher LLP, Irvine, California; James A. Kelly, Gibson Dunn & Crutcher LLP, Denver, Colorado; for Defendant-Appellee.

---

## OPINION

GOULD, Circuit Judge:

Plaintiff Summer Whiteside brought a putative class action against Defendant Kimberly Clark Corp., alleging that the label of Defendant's baby wipes was misleading, in violation of California's false advertising laws. The district court granted Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), holding that the label was not misleading as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## BACKGROUND

### I. Facts

Plaintiff's class-action complaint alleges that several versions of Defendant's "Huggies Natural Care® Baby Wipes" (the "Products") were deceptively marketed in

Case 5:23-cv-01988-JGB-SP Document 39-1 Filed 07/17/24 Page 5 of 28 Page ID #:531



violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et. seq.* Plaintiff also brings claims for breach of warranty and unjust enrichment. Plaintiff claims that the words "plant-based wipes" (or "plant-based ingredients") and "natural care®" on the front label, together with the nature-themed imagery displayed on the packaging, suggest that Defendant's baby wipes contain only "water, natural ingredients, and ingredients that come from plants and that are not subject to chemical modification or processing." To the contrary, the Products contain synthetic ingredients that do not come from plants and are subject to chemical modification or processing.

Plaintiff alleges that she regularly purchased Defendant's baby wipes from Target every two weeks over a five-month period. Plaintiff also asserts class allegations on behalf of consumers who purchased the same or substantially similar Products during the same time period. Although all Products purchased by the putative class members allegedly contain the phrases "natural care" and "plant-based," Defendant uses a variety of label designs for its wipes, with some differences. For example, Plaintiff's complaint contains an image of the label of the wipes she purchased:




And attachments to the complaint contain numerous examples of the other label designs that Defendant used, like the following example:




After reviewing the different types of Products described, the district court separated the label designs into two categories: (1) labels where an asterisk was placed after "plant-based wipes*" and a corresponding qualifying statement ("*70%+ by weight") was present elsewhere on the front label (the "Asterisked Products"); and (2) labels on which no asterisk or qualifying statement appeared on the front label (the "Unasterisked Products"). *Whiteside v. Kimberly Clark Corp.*, Case No. 5:22-cv-01988-JGB-SP, 2023 WL 4328175, at *4 (C.D. Cal. June 1, 2023). Plaintiff alleges that the wipes she purchased were among the Unasterisked Products, and that the Asterisked Products are substantially similar.

Both the Asterisked and Unasterisked Products contain a list of ingredients on their back label. Directly preceding the ingredients list is a statement reading: "NATURAL AND SYNTHETIC INGREDIENTS." The following is an image of the back label on the wipes Plaintiff purchased and a magnified image of the ingredients section:







## II. <u>District Court Proceedings</u>

Defendant moved to dismiss Plaintiff's complaint for lack of standing under FRCP 12(b)(1)[1] and for failure to state a claim under FRCP 12(b)(6). *Whiteside*, 2023 WL 4328175, at *1. The district court granted Defendant's motion under FRCP 12(b)(6), concluding that Plaintiff had failed to plausibly allege that a reasonable consumer would be misled by the Products' packaging. *Id.* at *7. Although its analysis was based on Plaintiff's statutory (UCL, FAL, and CLRA) claims, the district court determined that the

[1] The district court did not rule on standing, and Defendant does not challenge Plaintiff's standing on appeal.

same reasoning applied to Plaintiff's warranty and unjust enrichment claims, and the court dismissed Plaintiff's complaint in its entirety. *Id.*

The district court concluded that the Asterisked Products were not misleading as a matter of law because the front label qualified that the wipes were not wholly plant-based, but instead were "70%+ [plant-based] by weight." *Whiteside*, 2023 WL 4328175, at *4 (alteration added). The district court also reasoned that the "natural and synthetic ingredients" disclaimer on the back label "dispel[led] whatever misrepresentation allegedly exists." *Whiteside*, 2023 WL 4328175, at *4.

Although the Unasterisked Products presented a "closer question," the district court found that those products too were not misleading as a matter of law. The district court noted that Plaintiff's interpretation of the front label—as implying that the wipes contained only natural, plant-based ingredients—was "contrary to the disclaimer on the back of the label that expressly states the Product contains 'natural and synthetic ingredients.'" *Whiteside*, 2023 WL 4328175, at *5. Applying this court's decisions in *Ebner v. Fresh, Inc.* and *Moore v. Trader Joe's Co.*, the district court reasoned that when a product's front label is not "unmistakably clear about the facet for which she seeks more information," a reasonable consumer is expected to look to other features of the packaging, such as the fine print on the back label. *See id.* at *7 (citing *Ebner*, 838 F.3d 958 (9th Cir. 2016); *Trader Joe's*, 4 F.4th 874 (9th Cir. 2021)). The district court also found that the term "plant-based" "plainly means mostly, not necessarily all, derived from plants," and that the Unasterisked Products were not misleading as a matter of law, even without reference to the back label. *Id.* Plaintiff timely appealed.

## LEGAL STANDARDS

### I. Standard of Review

"A dismissal for failure to state a claim pursuant to [FRCP] 12(b)(6) is reviewed *de novo*. All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara Cnty Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007) (internal citations and quotation marks omitted). "Dismissal of a complaint under [FRCP] 12(b)(6) is appropriate when the complaint fails to state sufficient facts creating a plausible claim to relief." *Trader Joe's*, 4 F.4th at 880.

### II. False Advertising

A. Reasonable Consumer Standard

California's UCL, FAL, and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers. Those laws prohibit not only false advertising, but also advertising that is "either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Claims under each of these statutes are governed by the "reasonable consumer" standard, which requires a plaintiff to "show that members of the public are likely to be deceived" by the defendant's marketing claims. *Id.* (internal quotation marks and citation omitted).

The reasonable consumer standard requires more than a mere possibility that the label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quoting

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (citation omitted). Stated another way, a complaint asserting a violation of these laws must allege that the packaging will deceive many consumers, not just that a few might be deceived. Although there is no bright-line test, "the law does not concern itself with trifles." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 79 (2013).

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)) (other citations omitted). Likewise, in federal court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have "occasionally been upheld," but such cases are "rare." *Id.* at 939. Dismissal is appropriate when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.*

B. Back-Label Disclaimers and Ingredients Lists

Placing a disclaimer or a fine-print ingredients list on a product's back label does not necessarily absolve a defendant of liability for deceptive statements on the front label. In the seminal case *Williams*, the defendant sold a product called "Fruit Juice Snacks" that displayed images of various fruits on its front label. *Id.* at 936. The product's side-label ingredients list disclosed that it contained none of the pictured fruits and that the only fruit-related ingredient

was white grape concentrate. *Id.* We reversed dismissal of the plaintiff's UCL and CLRA claims because we "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939.

California courts have endorsed *Williams*, describing it as "an especially perceptive decision" on the issue of the "front-back dichotomy." *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018); *see also Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 949 (2020). The *Brady* court, for example, adopted our conclusion in *Williams* that "a back label that [does] not *confirm* what was on the front label [cannot] defeat . . . a pleading stage challenge to the plaintiff's UCL, CRLA, false advertising and warranty claims." *Id.* at 1168 (emphasis in original). The *Brady* court found that "One A Day" branded vitamins were misleading because consumers in fact had to take two vitamins daily to achieve the recommended dosage. *Id.* at 1178-80. Following *Williams*, *Brady* dismissed the product's back-label disclosure—which clearly directed consumers to take two vitamins daily—and it rejected "the assumption that reasonable consumers of vitamins are back-label scrutinizers." *Id.* at 1174. *Williams* and *Brady* stand for the proposition that if a product's front label is plausibly misleading to reasonable customers, then the court does not consider the back label at the pleadings stage. Whether the back label ultimately defeats the plaintiff's claims is a question left to the fact-finder.

More recent cases have clarified that a product's back label may be considered at the pleadings stage if the front label is ambiguous. *McGinity v. Procter & Gamble Co.*, 69

F.4th 1093, 1099 (9th Cir. 2023) ("[When] a front label is ambiguous, the ambiguity can be resolved by reference to the back label.") *McGinity* involved a shampoo and conditioner called "Pantene Pro-V Nature Fusion" that featured an image of an avocado on a green leaf and a gold vitamin on the front label. *Id.* at 1095-96. The plaintiff argued that the label suggested the product was "natural," even though it was made with synthetic ingredients. *Id.* at 1096. After reviewing the product's labeling, we reasoned that the front label was ambiguous because "Nature Fusion" could mean "that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *Id.* at 1098. Accordingly, we looked to the back label, which included, *inter alia*, an ingredients list featuring synthetic ingredients that "a reasonable consumer would not think are natural." *Id.* at 1099. We concluded that the back label clarified the ambiguity on the front label and removed any reasonable possibility that consumers would be misled. *See id.* at 1098-99.

In some cases, other contextual factors aside from the back label can defeat claims that a product's label is misleading. In *Trader Joe's*, we rejected the charge that honey labeled "100% New Zealand Manuka Honey" was misleading, even though the product consisted of "only between 57.3% and 62.6% honey derived from Manuka flower nectar." 4 F.4th at 876. We held that the plaintiff's belief that the honey was derived entirely from one floral source was implausible. *See id.* at 882, 884. We did not look to the back label in that case; instead, we noted that three contextual factors were dispositive. "First and foremost," "given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey

that is derived exclusively from a single floral source," and "[a] reasonable consumer would not understand Trader Joe's label . . . as promising something that is impossible to find." *Id.* at 883. Second, the relatively inexpensive cost of Trader Joe's honey would have "signal[ed] to a reasonable consumer that the product has a relatively lower concentration of honey derived from Manuka flower nectar." *Id.* at 884. Third, the front label displayed a "10+" denoting the honey's "relatively low" quality based on a well-known grading system used specifically for Manuka honey.[2] *Id.* at 878, 884-85.

In analyzing each of these factors, we noted that Manuka honey is "a niche, specialty product," and that buyers were "undoubtedly more likely to exhibit a higher standard of care than a parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, who is not likely to study with great diligence the contents of a complicated product package." *Id.* at 884. (internal quotation marks and citation omitted). A reasonable consumer of specialty honey would be aware not only of how honey is made, but also of the industry grading system and the fact that the purest Manuka honey typically costs around 20-times more than Trader Joe's. *See id.* at 878. These contextual factors defeated the plaintiff's claim that the front label was misleading. *Id.* at 881.

[2] Manuka honey producers use a grading system that rates honey on a scale of "5+ to 26+" based on the concentration of a sought-after compound naturally occurring in that type of honey. *Trader Joe's*, 4 F.4th at 877.

## DISCUSSION

### I. Determining Front-Label Ambiguity

A threshold issue in this case is whether the Products' back-label ingredients list—which states that the Products contain "natural and synthetic ingredients"—should be considered at the pleadings stage. The parties generally agree that if the front label is ambiguous, then we must look to the back label. But the parties disagree on how we may determine that the front label is ambiguous, and they present us with two theories.

For its part, Defendant invokes *McGinity*'s holding that "the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *McGinity*, 69 F.4th at 1098. Defendant reads *McGinity* to mean that a front label is ambiguous if it can have more than one possible meaning.

Plaintiff counters that a front label can be unambiguous for FRCP 12(b)(6) purposes even if it may have two possible meanings, so long as the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning.

We agree with Plaintiff's construction of the law. The overly restrictive standard proposed by Defendant is inconsistent with our precedent and that of California courts. But we acknowledge that *McGinity* lends some facial support to Defendant's position, and we take this opportunity to clarify our analysis in that case.

In *McGinity*, we stated that: "the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with

the front label." *McGinity*, 69 F.4th at 1098. In characterizing the law as such, we did not hold that a plaintiff must *prove* that the label is unambiguously deceptive to survive dismissal. After all, that position would be manifestly incompatible with the pleading standard found in FRCP 12(b)(6). Rather, we held that a plaintiff must *plausibly allege* that the front label would be unambiguously deceptive to an ordinary consumer, such that the consumer would feel no need to look at the back label. We stated this better when quoting *Trader Joe's*, which held that a front label is ambiguous if "reasonable consumers would necessarily require more information before they could reasonably conclude" that the front label was making a specific representation. *McGinity*, 69 F.4th at 1097 (quoting *Trader Joe's*, 4 F.4th at 882).

Our reading of *McGinity* is consistent with the facts of that case and the sources on which we drew. We cited *Ebner*, which "consider[ed] the rest of the product's packaging when there was 'no deceptive act to be dispelled' on the front." *Ebner*, 838 F.3d at 966. The important fact in *Ebner* was not that the plaintiff failed to prove that the label's representations were deceptive, but that the label made *no representation at all*. Likewise, the front label in *McGinity*—featuring "Nature Fusion"—was so devoid of any concrete meaning that there was nothing "from which *any* inference could be drawn or on which *any* reasonable belief could be based about" the shampoo's ingredients. *Id.* (emphasis in original). In each case, a reasonable consumer would necessarily have required more information before concluding that the products' front labels were making a specific promise.

This approach is consistent with California law, both as articulated by California courts and as interpreted in our

prior decisions. As discussed above, California courts have adopted our holding in *Williams* that "[y]ou cannot take away in the back fine print what you gave on the front in large conspicuous print." *Brady*, 26 Cal. App. 5th at 1172 (citing *Williams*); *see also Skinner*, 53 Cal. App. 5th at 949. Importantly, *Brady* applied this rule to a front label that was susceptible to two possible meanings, but it did not conclude that this rendered the label ambiguous. Considering the "One A Day"-branded vitamins, *Brady* acknowledged that some sophisticated consumers might not interpret "One A Day" literally and would inquire into the back label. *Brady*, 26 Cal. App. 5th at 1174-75. But other reasonable consumers might take the front label at face value and assume that they needed to take only one vitamin daily. *Id.* Despite these two possible interpretations, the court ruled that the defendant was precluded from relying on the back label because the plaintiff had plausibly alleged that reasonable customers would see the front label as making an unambiguous representation. *See id.* Put another way, reasonable consumers would not necessarily require more information before concluding that they needed to take only one vitamin daily.

Defendant's interpretation of *McGinity* would effectively overrule *Williams* and *Brady*, something we did not and could not do as a three-judge panel of the Ninth Circuit. We cited *Williams* with approval throughout our opinion and did not mention *Brady*. *See, e.g.*, *McGinity*, 69 F.4th at 1098. *Williams* and *Brady* require only that a front label be plausibly misleading for a plaintiff to survive dismissal, and *McGinity* did not hold otherwise. Contrary to Defendant's suggestion, our cases affirm that a front label is not ambiguous simply because it is susceptible to two possible meanings; a front label is ambiguous when

reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation.[3] Only in these circumstances can the back label be considered at the dismissal stage. With this background of the applicable law, we turn to and address whether such circumstances are present here.

## II. Whether the Products' Labels Are Not Misleading as a Matter of Law

As explained above, the district court ruled that both the Asterisked and Unasterisked Products were not misleading as a matter of law. We first consider the Unasterisked Products.

### A. Unasterisked Products

Analysis of the Unasterisked Products turns on whether the terms "plant-based" and "natural care," along with images of leaves and trees, can be reasonably interpreted as representing that the Products contained only natural, plant-based ingredients. Relying on *McGinity*, Defendant argues that, "[b]ecause the term 'plant-based wipes' could reasonably be interpreted to mean that the wipes are *either* primarily or entirely made of plant-based ingredients," the Products' front label is at best ambiguous, and the district court correctly "considered the packaging as a whole, which

---

[3] Our position is consistent with that of our sister circuits. *E.g., Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476-78 (7th Cir. 2020); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638-39 (2d Cir. 2018). In *Bell*, the Seventh Circuit cited *Williams* as support for rejecting a district court's proposed "ambiguity rule" that "as a matter of law, a front label cannot be deceptive if there is any way to read it that accurately aligned with the back label." *Bell*, 982 F.3d at 476-77.

. . . refuted [Plaintiff's] all-natural interpretation." We first address the threshold issue of whether the Products' back label should be considered at this stage. We then turn to whether the front label, standing alone, is misleading as a matter of law.

*i. Relevance of the Back Label*

We reject Defendant's contention that the Unasterisked Products' front label is ambiguous, such that the district court correctly considered the back label. First, Defendant misstates the law. A front label is not ambiguous in a California false-advertising case merely because it is susceptible to more than one reasonable meaning. *Brady*, 26 Cal. App. 5th at 1174-75. Second, Defendant's reliance on *McGinity* is misplaced. The representations at issue here are materially different than those at issue in that case. Although "plant-based" could be interpreted in different ways, it plausibly conveys a concrete and unambiguous meaning to a reasonable customer: that the product is entirely plant-based and exclusively contains "natural" materials. This stands in direct contrast to the all-but-meaningless marketing term "Nature Fusion" in *McGinity*. Likewise, and unlike the label in *Ebner*, "plant-based," together with the Products' allusions to "natural care" and nature imagery, plausibly suggests *some* representation about the contents of the package. It cannot be said that there are "no . . . words, pictures, or diagrams . . . from which *any* inference could be drawn." *Ebner*, 838 F.3d at 966 (emphasis in original).

The district court cited *Trader Joe's* for the proposition that "a rational consumer who cares about what 'plant-based' means could look to the back of the Product, which clarifies that it contains both 'natural and synthetic ingredients.'" *Id.* As an initial matter, front-label ambiguity

is determined not by whether a consumer "could" look beyond the front label, but whether they *necessarily* would do so. *Trader Joe's*, 4 F.4th at 882. The standard articulated by the district court would require a customer to consult the information on the back label any time such information is present. This is at odds with our holding in *Williams* that a consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939.

The district court's reliance on *Trader Joe's* was also misplaced because of the vastly different products at issue. In *Trader Joe's*, we noted that "[c]onsumers of Manuka honey, a niche, specialty product, are undoubtedly more likely to exhibit a higher standard of care than 'a parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow,' who is 'not likely to study with great diligence the contents of a complicated product package.'" *Trader Joe's*, 4 F.4th at 884 (citation omitted). Here, Plaintiff alleges that she is a parent without any specialized knowledge, purchasing baby wipes for her young child. *Trader Joe's* makes clear that consumers of everyday items are not expected to study labels with the same diligence as consumers of specialty products. *See Trader Joe's*, 4 F.4th at 884; *see also Brady*, 26 Cal. App. 5th at 1172 (contrasting "mass-market products" like vitamin gummies with products that would "appeal to skeptical consumers scrutinizing labels in a health food market"). Defendant does not assert that baby wipes are a niche product marketed to a small, sophisticated class of customers with deep knowledge of how baby wipes are made.

In summary, Plaintiff has plausibly alleged that a reasonable consumer could interpret the front label as

unambiguously representing that the Products do not contain synthetic ingredients, and that a reasonable consumer would not necessarily require more information from the back label before so concluding. These plausible allegations preclude Defendant's reliance on the back-label ingredients list at this stage. *See Brady*, 26 Cal. App. 5th at 1168 ("[A] back label that [does] not *confirm* what was on the front label [cannot] defeat . . . UCL, CRLA, false advertising and warranty claims" at the pleadings stage." (emphasis in original) (citing *Williams*, 552 F.3d at 939-40)). The back label may persuade the fact-finder that the Products' packaging is not misleading, but it is not a basis for dismissal under FRCP 12(b)(6).

*ii. Front Label's Tendency to Mislead*

Having rejected Defendant's assertion that the Products' front label is sufficiently ambiguous to permit recourse to the back label, we turn to the district court's conclusion that the front label, standing alone, was not misleading as a matter of law.

The district court reasoned that "Defendant's use of the term 'plant-based' . . . is not misleading because it is truthful," since the Products "contain at least 70% plant-based ingredients by weight." *Whiteside*, 2023 WL 4328175, at *6. This reasoning is unpersuasive, because California law prohibits not only false statements, but also true statements that have a tendency to mislead. *Williams*, 552 F.3d at 938.

Further, the district court's logic is premised on the assumption that "'plant-based' plainly means mostly, not necessarily all, derived from plants." *Whiteside*, 2023 WL 4328175, at *6. The district court offered little support for its assumption that this is the only reasonable interpretation

of "plant-based." *See id.* For its part, Defendant argued that "[r]easonable consumers understand that baby wipes don't grow on trees . . . . [and also understand that] baby wipes are manufactured through sophisticated mechanical processes, using a combination of natural and synthetic ingredients to ensure that the wipes are effective, shelf-stable, and affordable." *Id.* at *4. On appeal, Defendant also attempts an analogy to similar-sounding terms, such as a "tomato-based" sauce, which Defendant claims most people understand does not mean that the sauce contains only tomatoes.

We are not persuaded by Defendant's contention that "[r]easonable consumers understand that baby wipes don't grow on trees." Reasonable consumers also understand that meat does not grow on trees, yet technology has advanced such that plant-based meat is now available.[4] Consumers could reasonably suppose that manufacturers have similarly devised a way to make baby wipes using only plant-based compounds.

We are also not convinced that a reasonable consumer would necessarily "know baby wipes are manufactured through sophisticated mechanical processes, using a combination of natural and synthetic ingredients." *See Whiteside*, 2023 WL 4328175, at *4 (quoting Defendant's motion for summary judgment). Unlike bees (at issue in *Trader Joe's*), which are familiar to anyone who has encountered vegetation, most people likely have not

[4] *See How Beyond Meat became a $550 million brand, winning over meat-eaters with a vegan burger that 'bleeds'*, CNBC, https://www.cnbc.com/2019/01/21/how-bill-gates-backed-vegan-beyond-meat-is-winning-over-meat-eaters.html (last visited June 28, 2024).

Case 5:22-cv-01988-JGB-SP Document 32-1 Filed 07/07/24 Page 23 of 24 Page ID #:534 of 28



contemplated how baby wipes are made. Similarly, most consumers likely have not considered whether synthetic ingredients are necessary to make wipes "shelf-stable," a term that is not part of common language.

Defendant's analogy of "tomato-based" sauces does not hold up to scrutiny. It may be commonly known that tomato-based sauces contain non-tomato ingredients, but there is no reason to assume that consumers interpret all terms ending in "-based" in the same way. As *Trader Joe's* explained, an advertising claim, such as describing a product as 100%-something, can be interpreted very differently depending on what the "something" is. *See Trader Joe's*, 4 F.4th at 882-83 (contrasting "100% grated parmesan cheese" with "100% New Zealand Manuka Honey").

The plausibility of Plaintiff's interpretation of "plant-based" is bolstered by a consensus among California district courts that the term can reasonably imply that a product is entirely derived from natural, plant-based ingredients. *E.g.*, *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *8 (N.D. Cal. May 5, 2021) (noting consensus and citing cases); *Moore v. EO Prods., LLC*, 2023 WL 6391480, at *7 (N.D. Cal. Sept. 29, 2023) (same); *Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at *11 (N.D. Cal. Aug. 3, 2021) ("Recent cases involving cleaning products illustrate the idea that statements broadly describing a certain type of ingredient can mislead consumers into thinking the products at issue contain *only* that type of ingredient." (emphasis in original)).

Finally, we look to the FTC's "Green Guides," which warn that unqualified representations like "made with renewable materials" are likely to mislead a reasonable consumer to believe that a product "is made entirely with

renewable materials." Federal Trade Commission, *Guides for the Use of Environmental Marketing Claims*, 16 C.F.R. § 260.16 (hereinafter, "Green Guides"). The FTC recommends that marketers instead specify what portion of their product is made with renewable materials, such as by saying "[o]ur packaging is made from 50% plant-based renewable materials." *Id.* The Green Guides are more than persuasive authority in California; they have been codified as law. Cal. Bus. & Prof. Code § 17580.5 ("For the purpose of [the section prohibiting "misleading environmental marketing claims"], 'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission.").

Defendant correctly notes that the FTC has declined to provide guidance on the term "plant-based" specifically, and it has not labeled the term *per se* deceptive. Federal Trade Commission, *The Green Guides: Statement of Basis and Purpose* 246 (2012 ed.), https://tinyurl.com/5r47sjth (last visited June 27, 2024). Nevertheless, the Unasterisked Products' unqualified "plant-based" representation is analogous to the "made with renewable materials" language used in the Green Guides, in that both terms might lead a reasonable consumer to believe that a product "is made entirely with" renewable or plant-based materials. This further convinces us that, at a minimum, this is not one of the "rare" cases in which dismissal is appropriate.

We reverse the district court's dismissal of Plaintiff's claims as to the Unasterisked Products.

B. <u>Asterisked Products</u>

Having found that "plant-based" is plausibly misleading if used without qualification, we next consider whether the

Case 5:23-cv-01884-GBJ-SP Document 32-1 Filed 07/24/24 Page 25 of 28 Page ID #:551



use of an asterisk and the qualifying statement "*70+% by weight" on the front label of the Asterisked Products "ameliorate[s] any tendency of [the] label to mislead." *McGinity*, 69 F.4th at 1098 (citation omitted). The district court held that "a reasonable consumer would not simply assume the Asterisked Products contain 100% natural ingredients when she can plainly see that the wipes are 70% plant-based by weight." *Whiteside*, 2023 WL 4328175, at *4 (internal quotation marks and citation omitted). Plaintiff asserts that "70%+ by weight" is ambiguous and "whether reasonable consumers understand . . . [it] to mean the Products are free from artificial ingredients presents questions of fact inappropriate for resolution on a motion to dismiss." The district court rejected Plaintiff's argument and found that the "Asterisked Products are unmistakably clear on the front [label] that they are 70% plant-based by weight." *Whiteside*, 2023 WL 4328175, at *7.

We agree with the district court. The Asterisked Products track the Green Guides' recommendation that marketers "qualify any 'made with renewable materials' claim unless the product or package (excluding minor, incidental components) is made entirely with renewable materials," such as by describing the product as "made from 50% plant-based renewable materials." Green Guides § 260.16. The California statute prohibiting misleading environmental marketing claims provides that "[i]t shall be a defense to any suit or complaint brought under this section that the person's environmental marketing claims conform to the standards or are consistent with the examples contained in the [Green Guides.]" Cal. Bus. & Prof. Code § 17580.5(b)(1). The Asterisked Products are not an exact match for the example in the Green Guides, but they are

consistent with the principle illustrated therein that environmental claims must be qualified.

We reach the same conclusion even giving Plaintiff the benefit of the doubt that "70%+ by weight" is ambiguous. If the statement were ambiguous, a reasonable consumer would require more information from the back label, and the back label clarifies that the Products contain both "natural and synthetic ingredients." Even before reading the back label, the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume that the Products were 100% plant-based. *See, e.g.*, *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. July 18, 2023) ("Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled.").

The asterisk and qualifying statement on the Asterisked Products, paired with the back label ingredients list, "[makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939. We affirm the district court's dismissal of Plaintiff's claims as to the Asterisked Products.

## III. **Whether Plaintiff Complied with the Particularity Requirements of Rule 9(b).**

Defendant claims that FRCP 9(b) provides an alternative basis for dismissing Plaintiff's complaint, an issue not reached by the district court. When a plaintiff brings fraud or misrepresentation claims, "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

2009) (internal quotation marks and citations omitted). The plaintiff must plead "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks and citations omitted).

Defendant contends that Plaintiff failed to "particularly plead[] the *what* as part of the who, what, when, where, and how of the misconduct charged" because Plaintiff "never specifies which, if any, of the dozens of images in her complaint corresponds to the package *she* saw in store [sic] and purchased."

Defendant is incorrect. Plaintiff's complaint states that Plaintiff purchased "Huggies Natural Care® Baby Wipes (Sensitive) in 56 count size" at Target. The complaint refers to an exhibit that features an image of the label Plaintiff saw.[5] There are indeed dozens of labels in the record because this is a putative class action, but Plaintiff's complaint sufficiently alleges the particular label she herself saw. We reject Defendant's alternative grounds for affirming dismissal under FRCP 9(b).

## IV. Other Claims

The district court dismissed Plaintiff's claims for warranty and unjust enrichment, summarily concluding that, "[b]ecause the Complaint [was] subject to dismissal in its entirety on the [UCL, FAL, and CLRA] grounds, the Court need[ed] not reach" the other claims. *Whiteside*, 2023 WL 4328175, at *7. Because we reverse in part as to the

[5] Defendant claims that "every image of wipes in the complaint that were available for purchase at Target [were Asterisked Products]," contrary to Plaintiff's allegation that she purchased Unasterisked Products. This factual dispute is inappropriate for resolution at this stage and does not detract from the particularity of Plaintiff's allegations.

Unasterisked Products, the district court must reconsider Plaintiff's warranty and unjust enrichment claims with respect to those products.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Plaintiff's UCL, FAL, CLRA, breach of warranty, and unjust enrichment claims as to the Asterisked Products; REVERSE the dismissal as to the Unasterisked Products; and REMAND for further proceedings consistent with this disposition.